**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ADAM WALKER,<br><br>            Plaintiff,<br><br>      v.<br><br>EXTERRAN CORPORATION, MARK R. SOTIR, ANDREW J. WAY, WILLIAM M. GOODYEAR, JAMES C. GOUIN, JOHN P. RYAN, CHRISTOPHER T. SEAVER, HATEM SOLIMAN, and IEDA GOMES YELL,<br><br>            Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Adam Walker ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Exterran Corporation ("Exterran" or the "Company") and the members of Exterran's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Exterran to Enerflex Ltd. ("Enerflex") (the "Proposed Transaction").

2. On January 24, 2022, Exterran entered into an Agreement and Plan of Merger with Enerflex and Enerflex US Holdings Inc. ("Merger Sub") (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Enerflex will acquire Exterran in an all-stock transaction, with Exterran shareholders receiving 0.1.021 Enerflex shares for each share of Exterran common stock.

3. On September 9, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Exterran stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for Exterran and Enerflex; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Wells Fargo Securities, LLC ("Wells Fargo").

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Exterran stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Exterran stockholders to vote on the Proposed Transaction is currently scheduled for October 11, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Exterran's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Exterran common stock.

10. Defendant Exterran is a Delaware corporation, with its principal executive offices located at 11000 Equity Drive, Houston, TX 77041. Exterran's shares trade on the New York Stock Exchange under the ticker symbol "EXTN."

11. Defendant Mark R. Sotir has been Executive Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Andrew J. Way has been President and Chief Executive Officer and a director of the Company at all relevant times.

13. Defendant William M. Goodyear has been a director of the Company at all relevant times.

14. Defendant James C. Gouin has been a director of the Company at all relevant times.

15. Defendant John P. Ryan has been a director of the Company at all relevant times.

16. Defendant Christopher T. Seaver has been a director of the Company at all relevant times.

17. Defendant Hatem Soliman has been a director of the Company at all relevant times.

18. Defendant Ieda Gomes Yell has been a director of the Company at all relevant times.

19. Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Founded in 1954, Exterran is a systems and process company that provides various solutions in the oil, gas, water, and power markets worldwide. The Company operates through three segments: Contract Operations, Aftermarket Services, and Product Sales. Exterran offers compression, processing, and treating services through the operation of natural gas compression equipment, and crude oil and natural gas production and process equipment, and water treatment and power generation solutions. The Company also sells parts and components and provides operation, maintenance, repair, overhaul, and reconfiguration services, among other things.

**The Proposed Transaction**

21. On January 24, 2022, Exterran announced that it had entered into the Proposed Transaction, stating, in relevant part:

> CALGARY, Alberta and HOUSTON, Jan. 24, 2022 (GLOBE NEWSWIRE) -- Enerflex Ltd. ("Enerflex" or the "Company") (TSX: EFX) and Exterran Corporation ("Exterran") (NYSE:EXTN) today announced a business combination (the "Transaction") to create a premier integrated global provider of energy infrastructure. The company will operate as Enerflex Ltd. and will remain headquartered in Calgary, Alberta, Canada. Through greater scale and efficiencies, the transaction will strengthen Enerflex's ability to serve customers in key natural

gas, water, and energy transition markets, while enhancing shareholder value through sustainable improvements in profitability and cash flow generation.

The companies will combine in an all-share transaction pursuant to which Enerflex will acquire all of the outstanding common stock of Exterran on the basis of 1.021 Enerflex common shares for each outstanding share of common stock of Exterran, resulting in approximately 124 million Enerflex common shares outstanding upon closing, representing an implied combined enterprise value of approximately US$1.5 billion. The transaction value for Exterran is approximately US$735 million, which represents an 18% premium to Exterran's enterprise value as at January 21, 2022. The transaction value paid for Exterran implies an EV/2022E Adjusted EBITDA of 3.6x and Price/2022E Cash Flow of 1.9x, including synergies, respectively. Upon closing of the Transaction, Enerflex and Exterran shareholders will respectively own approximately 72.5% and 27.5% of the total Enerflex common shares outstanding. Enerflex will continue to trade on the Toronto Stock Exchange ("TSX") and intends to apply to either the New York Stock Exchange (the "NYSE") or the NASDAQ exchange ("NASDAQ") for the listing of Enerflex common shares to be effective upon Transaction close.

"This is an exciting day in the history of our companies. The Transaction is immediately accretive to shareholders; enhances our presence, offerings, and scale across our regions; and importantly, executes upon our years-long strategic goal of increasing recurring revenues to improve the profitability and resiliency of our platform," said Marc Rossiter, Enerflex's President and Chief Executive Officer. "Enerflex and Exterran each have a long history of global expertise in the delivery of modular energy solutions. Together, we are more efficient and better positioned in global capital markets. The Transaction will improve our ability to partner with an expanded set of customers to solve their growing energy infrastructure challenges with integrity, creativity, commitment, and success."

"We are excited about the ability to create shareholder value through this Transaction and improving our product and service offering. The scale and efficiencies this combination brings is the right path for Exterran and brings significant opportunities for accelerated growth in produced water treatment and energy transition products and services," said Andrew Way, President and Chief Executive Officer of Exterran.

**Strategic Rationale**

- **Creates a Premier Integrated Global Provider of Energy Infrastructure:**
    - Highly complementary product lines, geographies, and asset bases provide enhanced scale, efficiencies, and expanded offerings for customers.

- o   The pro forma geographic exposure will be well-balanced with approximately 25-35% of revenues from each of North America, the Middle East, and Latin America.

- **Accelerates Growth of Gross Margin from Recurring Segments:**

  - o   Combination significantly accelerates the generation of predictable, recurring gross margin from energy infrastructure and after-market services platforms.

  - o   Over 70% of the combined entity's gross margin will derive from recurring sources, strengthening its margin profile and reducing cyclicality.

- **Improved Operational Efficiencies:**

  - o   Expect to realize at least US$40 million of annual run-rate synergies within 12 to 18 months after closing through overhead savings and operating efficiencies.

- **Accretive to Shareholders:**

  - o   Expected to approximately double Adjusted EBITDA and be over 50% accretive to cash flow per share and approximately 50% accretive to earnings per share (subject to purchase price allocation to be determined upon closing), for Enerflex shareholders.

  - o   Enhanced scale with pro forma 2023E Adjusted EBITDA of US$360 million to 400 million, inclusive of synergies.

  - o   Meaningful excess free cash flow beginning in 2023 that supports debt reduction, shareholder returns, and continued growth.

  - o   After close, Enerflex expects to maintain its quarterly dividend of CAD$0.025 per common share.

- **Transaction Benefits From a Long-Term, Stable Capital Structure:**

  - o   The combined entity will benefit from a capital structure that provides ample liquidity.

  - o   In conjunction with the Transaction, Enerflex has entered into a binding agreement with the Royal Bank of Canada to provide Enerflex with a fully committed financing consisting of a US$600 million 3-year revolving credit facility and a US$925 million 5-year bridge loan facility. The bridge loan will provide financing to backstop an anticipated issuance of new debt securities prior to closing of the Transaction. The committed financing is sufficient to fully repay existing Enerflex and Exterran notes and revolving credit facilities and support putting in place a new capital structure,

      provide for capital expenditures and other ordinary course capital needs, and provide significant liquidity for the pro forma business.

- o  The new revolving credit facility will be subject to a bank-adjusted total net debt to EBITDA covenant of 4.5x, stepping down to 4.0x by the fourth quarter of 2023.

- o  Enerflex targets a bank-adjusted net debt to EBITDA ratio of 2.5x - 3.0x within 12 to 18 months of closing.

- o  Following capital project commitments in 2022, the combined entity's capital allocation in 2023 onwards will prioritize: (i) balance sheet strength; (ii) sustainable shareholder returns; and (iii) disciplined growth focused on full-cycle earnings.

- **Commitment to Sustainability:**

  - o  Aligns strong cultures emphasizing the health and safety of our global workforce and corporate citizenship.

  - o  Global coverage enhances the ability to deliver sustainable natural gas, water, and energy transition solutions, including carbon capture utilization and sequestration, biofuels (including renewable natural gas), produced water reuse and recycling, and electrification.

**Select Pro Forma Financial Information**

| | |
|---|---|
| Market Capitalization (1) | ~US$800 Million |
| Enterprise Value (1) | ~US$1.5 Billion |
| 2022E Adjusted EBITDA (including synergies) (2) (3) | US$320 - $370 Million |
| 2023E Adjusted EBITDA (including synergies) (2) (3) | US$360 - $400 Million |
| Annual Synergies (2) | US$40+ Million |
| Annual Maintenance Capital Spending | US$40 - $50 Million |

(1) Based on Enerflex's closing share price on the TSX and approximately 124 million Enerflex common shares outstanding upon closing, as at January 21, 2022.
(2) Annual run-rate synergies are expected to be fully realized within 12 to 18 months after closing.
(3) Adjusted EBITDA is a non-IFRS financial measure. See "Non-IFRS Measures and Other Financial Information" below.

**Governance and Leadership**

One Exterran director will be appointed to Enerflex's Board of Directors at closing. Mr. Marc Rossiter will continue to serve as Enerflex's President and Chief

Executive Officer and a member of the Board of Directors of Enerflex and will oversee all aspects of integration. Mr. Sanjay Bishnoi will continue to serve as Enerflex's Chief Financial Officer. Enerflex's Executive Management Team will continue to serve in their current roles.

**Timing and Approvals**

The Transaction is expected to close in the second or third quarter of 2022, subject to, among other things: the approval of the Transaction by Exterran stockholders; the approval by Enerflex shareholders of the issuance of Enerflex common shares pursuant to TSX requirements in connection with the Transaction; regulatory approvals; and other customary closing conditions, including those of the TSX and the NYSE or NASDAQ, as applicable.

Copies of the Transaction agreement and related materials will be filed by Enerflex with the Canadian securities regulators and will be available for viewing under Enerflex's profile on www.sedar.com. Enerflex shareholders are urged to read the information circular once available as it will contain important information concerning the Transaction.

**Support for the Transaction**

The Boards of Directors of Enerflex and Exterran have each unanimously approved the Transaction and recommend that their respective shareholders vote in favour of the Transaction.

All of the funds managed by Chai Trust Company, LLC that own common stock of Exterran and all of Exterran's directors and officers have entered into voting agreements with Enerflex pursuant to which they have agreed to vote their respective shares in favour of the Transaction at the meeting of Exterran shareholders.

All of the directors and officers of Enerflex have entered into voting agreements with Exterran pursuant to which they have agreed to vote their respective Enerflex common shares in favour of the issuance of Enerflex common shares pursuant to the Transaction at the meeting of Enerflex shareholders.

**The Materially Incomplete and Misleading Proxy Statement**

22.     On September 9, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Exterran stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information,

concerning: (i) the financial projections for Exterran and Enerflex; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Wells Fargo.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Exterran and Enerflex*

23. The Proxy Statement fails to disclose material information concerning the financial projections for the Company and Enerflex.

24. For example, with respect to the Company's and Enerflex's financial projections, the Proxy Statement fails to disclose the line items underlying the calculation of Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning Wells Fargo's Financial Analyses*

25. The Proxy Statement fails to disclose material information concerning Wells Fargo's financial analyses.

26. With respect to Wells Fargo's *Exterran Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the projection metric to which the perpetuity growth rates were applied in order to derive the terminal value and quantification thereof; (ii) the Company's terminal values; and (iii) the inputs and assumptions underlying the discount rates ranging from 13.5% to 14.5%.

27. With respect to Wells Fargo's *Exterran Selected Public Companies Analysis*, the Proxy Statement fails to disclose: (i) Wells Fargo's basis for only selecting Enerflex and Exterran as comparable companies, including how Exterran is a comparable company to itself; and (ii) the individual multiples and financial metrics for each of the selected companies and transactions analyzed by Wells Fargo.

28. With respect to Wells Fargo's *Exterran Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Wells Fargo.

29. With respect to Wells Fargo's *Enerflex Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the projection metric to which the perpetuity growth rates were applied in order to derive the terminal value and quantification thereof; (ii) Enerflex's terminal values; and (iii) the inputs and assumptions underlying the discount rates ranging from 10.0% to 11.0%.

30. With respect to Wells Fargo's *Enerflex Selected Public Companies Analysis*, the Proxy Statement fails to disclose: (i) Wells Fargo's basis for only selecting Enerflex and Exterran as comparable companies, including how Enerflex is a comparable company to itself; and (ii) the individual multiples and financial metrics for each of the selected companies analyzed by Wells Fargo.

31. In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of the Financial Advisor to Exterran – Opinion of Wells Fargo Securities, LLC" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Exterran will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

<u>**COUNT I**</u>

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Exterran**

32. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

33. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Exterran is liable as the issuer of these statements.

34. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

35. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

37. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

38. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

39. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of Exterran within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Exterran and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

44. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Exterran, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  September 28, 2022

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

**LONG LAW, LLC**

By  */s/ Brian D. Long*
Brian D. Long
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*